## UNITED STATES *v.* LEHN & FINK (No. 1997).[1]

1. CONSTRUCTION, GROUP III, SECTION 500, REVENUE ACT OF SEPTEMBER 8, 1916 (39 STAT., 756)—"FLAVORS."

Synthetic coumarin, shown to be used as a material in the manufacture of flavoring extracts, and not as a flavor itself, is not classifiable under the provision for "flavors," in Group III, section 500, revenue act of September 8, 1916 (39 Stat., 756).

2. CONSTRUCTION, SECTION 502, REVENUE ACT OF SEPTEMBER 8, 1916 (39 STAT., 756), AND PARAGRAPH 49, TARIFF ACT of 1913.

The provision of section 502, revenue act of September 8, 1916 (39 Stat., 756), that laws inconsistent therewith are thereby repealed does not operate upon the provision of paragraph 49, tariff act of 1913 for "all natural or synthetic odoriferous or aromatic substances, preparations, and mixtures used in the manufacture of, but not marketable as, perfumes or cosmetics" sufficiently (if at all) to prevent classification of synthetic coumarin under it.

3. CONSTRUCTION, PARAGRAPH 49, TARIFF ACT OF 1913—"USED."

The language of paragraph 49, tariff act of 1913, "used in the manufacture of but not marketable as, perfumes or cosmetics," does not require that the *chief* use of an article must be in the manufacture of perfumes or cosmetics in order that it may be dutiable under the paragraph. A *substantial* use is sufficient.

4. SYNTHETIC COUMARIN.

Synthetic coumarin, a coal-tar product which closely resembles a natural product obtained from the tonka bean, shown to be *substantially* used in the manufacture of perfumery, though *chiefly* used in the manufacture of flavoring extracts, concededly odoriferous or aromatic, is dutiable under the provision of paragraph 49, tariff act of 1913, for "all natural or synthetic odoriferous or aromatic substances, preparations, and mixtures used in the manufacture of, but not marketable as, perfumes or cosmetics." The decision of the Board of United States General Appraisers classifying it under the provision for "all similar products," Group II, section 500, revenue act of September 8, 1916 (39 Stat., 756), is reversed.

## United States Court of Customs Appeals, December 30, 1919.

APPEAL from Board of United States General Appraisers Abstract 43261.

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney of counsel), for the United States. ·
*Allan R. Brown* for appellees.

[Oral argument Dec. 16, 1919, by Mr. Hanson and Mr. Brown.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges

BARBER, Judge, delivered the opinion of the court:

It is agreed that the merchandise here is synthetic coumarin, a coal-tar product which closely resembles a natural product which is found in and obtained from the tonka bean.

---

[1] T. D. 38240 (38 Treas. Dec., —).

Under the title "Dyestuffs," an act of Congress approved September 8, 1916, contains provisions assessing duty upon, as well as giving free entry to, certain coal-tar products.

Under Group II in section 500 of that act duty is fixed upon such products variously and specifically named of certain degrees of purity, the paragraph closing with the following language:

all similar products obtained, derived, or manufactured in whole or in part from the products provided for in Group I, and all distillates which on being subjected to distillation yield in the portion distilling below two hundred degrees centigrade a quantity of tar acids equal to or more than five per centum of the original distillate, all the foregoing not colors, dyes, or stains, photographic chemicals, medicinals, flavors, or explosives, and not otherwise provided for in this title, and provided for in the paragraphs of the act of October third, nineteen hundred and thirteen, which are hereinafter specifically repealed by section five hundred and two, fifteen per centum ad valorem.

The importation here was classified as "flavors" under Group III of the same section, which we quote:

Group III. All colors, dyes, or stains, whether soluble or not in water, color acids, color bases, color lakes, photographic chemicals, medicinals, flavors, synthetic phenolic resin, or explosives, not otherwise specially provided for in this title, when obtained, derived, or manufactured in whole or in part from any of the products provided for in Groups I and II, natural alizarin and indigo, and colors, dyes, or color lakes obtained, derived, or manufactured therefrom, thirty per centum ad valorem.

In their protest importers claimed classification under paragraph 49 of the tariff act of 1913 and alternatively under the provisions in Group II above quoted. If classified under the alternative claim the merchandise would be assessed an additional duty of two and one-half cents per pound under the provisions of section 501, of the act of 1916, which it is unnecessary to quote.

Paragraph 49 of the act of 1913 reads as follows:

49. Ambergris, enfleurage greases and floral essences by whatever method obtained; flavoring extracts, musk, grained or in pods, civet, and all natural or synthetic odoriferous or aromatic substances, preparations, and mixtures used in the manufacture of, but not marketable as, perfumes or cosmetics; all the foregoing not containing alcohol and not specially provided for in this section, twenty per centum ad valorem.

If the merchandise is in fact a "flavor" within the meaning of the above Group III, it is of course specifically therein provided for and classifiable thereunder.

Upon this question evidence was introduced by both parties before the Board of General Appraisers. In the opinion of the board it is stated—

While it appears from the testimony that the article is used in substantial quantities both for flavoring and perfumery purposes, we think the more general use shown by this record is for the manufacture of flavoring extracts to be used in ice cream, candy, and articles of food.

*        *.        *        *        *        *        *

The testimony and the form in which it is imported further clearly shows that this article is not used as a flavor in its imported condition, but is a material used in the manufacture of flavoring extracts.

We therefore hold that it is not within the provision for "flavors" in Group III, section 500, act of 1916 * * *.

Upon the testimony of record in this case we think this conclusion of the board is sound and ought not to be disturbed here. The judgment of this court therefore, like that of the board, is that the merchandise was not dutiable as assessed.

The board however held that the merchandise was classifiable under Group II as one of the similar products therein referred to.

From this decision the Government appeals, claiming, first, that the collector's assessment was right, and further, that if not so, the merchandise should have been classified under paragraph 49 of the act of 1913.

The importers in this court, while arguing that the judgment of the board should be sustained, nevertheless admit that if the merchandise is not so classifiable, it would fall within the provisions of said paragraph 49.

Among other things, importers suggest that Congress by the provisions of section 502 of the act of 1916 may have intended to repeal paragraph 49. This section is as follows:

SEC. 502. That paragraphs twenty, twenty-one, twenty-two, and twenty-three, and the words "salicylic acid" in paragraph one of Schedule A of section one of an act entitled "An act to reduce tariff duties and to provide revenue for the Government, and for other purposes," approved October third, nineteen hundred and thirteen, and paragraphs three hundred and ninety-four, four hundred and fifty-two, and five hundred and fourteen, and the words "carbolic" and "phthalic" in paragraph three hundred and eighty-seven of the "free list" of section one of said act, and so much of said act or any existing law or parts of law as may be inconsistent with this title are hereby repealed

We are of opinion that this last-quoted section does not repeal paragraph 49. It is not specifically therein referred to, and we do not think the provision that laws inconsistent therewith are thereby repealed operates upon paragraph 49 sufficiently, if at all, to prevent classification of this coumarin thereunder. In none of the paragraphs referred to as specifically repealed is there any eo nomine provision for coumarin.

We hold that the provision in paragraph 49 for "all natural or synthetic odoriferous or aromatic substances, preparations, and mixtures used in the manufacture of, but not marketable as, per-. fumes or cosmetics" is more precisely applicable to this merchandise than are the provisions in Group II of section 500 of the later act The board in disposing of the case were of opinion that the importation did not fall under paragraph 49, because it was not chiefly used in the manufacture of perfumery or cosmetics. That, however, is not required by the paragraph. They did find that it had a substantial use in the manufacture of perfumery, and as it is concededly synthetic and odoriferous or aromatic, we think it naturally falls under the provisions of paragraph 49.

The judgment of the Board of General Appraisers is *reversed*.